IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FRONTIER ENERGY HOLDING GROUP, LLC,
a Nevada limited liability company; and
DAN K. EBERHART, an individual,

        Plaintiffs,

v.                                                  Civ. No. 09-981 MV/LFG

JOHN L. SUPROCK, an individual;
PCS BUSINESS BROKERS, LLC, a Montana limited
liability company; and DOES 1 through 20, inclusive,

        Defendants.

AND RELATED COUNTERCLAIMS

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant John L. Suprock's Motion to Dismiss, which seeks dismissal of all claims brought against him by Plaintiffs and dismissal of the alter ego claims of the Complaint. (Doc. Nos. 10-11). For the reasons stated below, the Motion will be **DENIED**.

## PLAINTIFF'S ALLEGATIONS

Frontier Energy Holding Group, LLC ("Frontier"), which is headed by Dan Eberhart, is a value-added service company for the oil and gas industry. (Complaint ¶ 11, Doc. No. 1). On December 31, 2008, Frontier, through one of its wholly-owned subsidiaries, acquired the assets of Frontier Wellhead and Supply Company, Inc. (*Id.* ¶ 12). It was during the course of this transaction that Plaintiffs Frontier and Mr. Eberhart first became exposed to Defendant PCS Business Brokers, LLC ("PCS") and its managing member, Defendant John L. Suprock, as they acted as the seller's broker in the transaction. (*Id.* ¶¶ 4 & 13).

Following the transaction, Frontier began to explore the acquisition of two other companies—Basin Concrete, Inc. ("Basin"), which was represented by Defendants, and WSI Enterprises, Inc. ("WSI"), which was unrepresented at the time Frontier first approached it. (*Id.* ¶ 14). WSI subsequently entered into a brokerage agreement with Defendants; however, as WSI had already commenced negotiations with Frontier, WSI expressly excluded from its brokerage arrangement any transaction that involved Frontier. (*Id.* ¶ 16).

Recognizing that a transaction between WSI and Frontier would result in Defendants receiving no commission, Plaintiffs allege that Defendants began to embark on a campaign designed to preclude any such transaction from going forward. (*Id.* ¶ 17). Specifically, Plaintiffs contend that Defendants misrepresented to WSI and others that Frontier and Mr. Eberhart did not aide by the deals that they entered into, that they were behind on payments that they agreed to make to the sellers in connection with their acquisition of Frontier Wellhead and Supply Company, Inc., and that it was Plaintiffs' business practice to renegotiate agreed upon deal points immediately prior to the close of a transaction. (*Id.*).

As a result of such statements, Plaintiffs contend that WSI began to retract from negotiations with Frontier. (*Id.* ¶ 19). When Plaintiffs attempted to restart the negotiation, WSI began to make demands for additional financial assurances, which it had not previously requested. (*Id.*). The statements also caused WSI to retract from prior negotiations for the seller to "carry" (*i.e.*, loan) part of the purchase price. (*Id.*). Further, Plaintiffs allege that the misrepresentations caused WSI to contact financial institutions with whom Frontier and Mr. Eberhart did business to inquire into the financial health of Frontier and Mr. Eberhart. (*Id.* ¶ 20). These inquiries, in turn, allegedly caused the financial institutions to demand more financial assurances and guarantees from Frontier and Mr. Eberhart prior to entering into any

2

future lending arrangements, thereby making it more difficult for Frontier and/or Mr. Eberhart to obtain funding for additional acquisitions. (*Id.*). Plaintiffs also allege that Defendants' misrepresentations to Basin caused Basin to refuse to provide any further information to Plaintiffs as part of the due diligence process and thus precluded Frontier from moving forward with its attempt to purchase Basin and/or assets owned by Basin. (*Id.* ¶ 21).

Plaintiffs' Complaint contains claims against Mr. Suprock and PCS for defamation (*id.* ¶¶ 22-33), intentional interference with prospective economic advantage (*id.* ¶¶ 34-44), and prima facie tort (*id.* ¶¶ 45-50). Plaintiffs further allege that "Defendant PCS is the alter ego of Defendant Suprock in that there exists . . . a unity of interest between Defendant Suprock and Defendant PCS such that any individuality and separateness between Defendant Suprock and Defendant PCS have ceased." (*Id.* ¶ 5).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations and citation omitted).

## ANALYSIS

By the instant Motion, Mr. Suprock argues that the claims against him should be dismissed because Plaintiffs admit that his actions were within the course and scope of his authority as a Managing Member of PCS. Mr. Suprock contends that because the Complaint

contains no factual averments that he made any of the alleged misrepresentations in his personal capacity, the Complaint fails to state a cause of action against him.  In support of his argument, Mr. Suprock cites NMSA 1978 § 53-19-13 for the basic proposition that "the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company."  Mr. Suprock also cites *Morrow v. Cooper*, 113 N.M. 246, 249, 824 P.2d 1048, 1051 (N.M. Ct. App. 1991), for the basic proposition that corporations are separate legal entities and that shareholders can thus commit limited capital to a corporation with the assurance that they will not be personally liable for the corporation's debt.

Plaintiffs' Complaint, however, alleges that Defendants (*i.e.*, both PCS *and* Mr. Suprock) engaged in the wrongful conduct (here, the making of false and defamatory statements).  (*See, e.g.*, Complaint ¶¶ 17, 23, 27, 33, 37, 38, 40, 43, 46, 47).  While the Complaint also contains allegations that "each defendant conspired and acted in concert with other defendants to commit the wrongs against Plaintiffs . . . and in doing so were at all relevant times the agents, servants, employees, principals, joint venturers, alter egos, and/or partners of each other" and that "each defendant was acting within the scope of the authority conferred upon that defendant by the consent, approval, and/or ratification of the other defendants," *id.* ¶ 7, the fact that Mr. Suprock may have been acting as an agent of PCS when he committed the alleged torts does not excuse him from individual liability as he suggests.  To the contrary, "an agent may be held individually liable for his own tortious acts, whether or not he was acting for a disclosed principal." *Kreischer v. Armijo*, 118 N.M. 671, 673, 884 P.2d 827, 829 (N.M. Ct. App. 1994); *see also Kaveny v. MDA Enters., Inc.*, 138 N.M. 432, 436-37, 120 P.3d 854, 858-59 (N.M. Ct. App. 2005) (recognizing corporate officers can be held personally liable when they commit intentional

4

torts, even when acting within the scope of their corporate duties, and that one need not pierce the corporate veil in order to establish such liability); *Stinson v. Berry*, 123 N.M. 482, 487, 943 P.2d 129, 134 (1997) ("[A]gents are liable for their own tortious acts, regardless of whether the principal is liable. . . . Thus, if corporate directors engage in tortious conduct, even though acting within the scope of their corporate duties, they can be personally liable for the injuries suffered as a result of that conduct."). In fact, the very authority on which Mr. Suprock relies in support of his Motion acknowledges that the business form does not immunize an officer or employee from liability for his own wrongful acts. *See* NMSA 1978 § 53-19-13 ("Nothing in this section shall be construed to immunize any person from liability for the consequences of his own acts or omissions for which he otherwise may be liable."); *Morrow*, 113 N.M. at 249, 824 P.2d at 1051 (acknowledging the corporate form does not preclude an officer from being sued individually for his wrongful acts).

In his reply brief, Mr. Suprock argues for the first time that he cannot be liable for the alleged tortious conduct as there are no allegations that he owed a duty to Plaintiffs outside of the brokerage relationship. Notably, Mr. Suprock has cited no authority that would suggest the torts at issue require a brokerage relationship or other special relationship between the parties. Instead, in support of his proposition, Mr. Suprock cites language from *Stinson v. Berry*, 123 N.M. at 487, 943 P.2d at 134, which provides "an officer or director of a corporation acting within the scope of his corporate duties may be personally liable for a tort injuring a third party, so long as the director or officer has a duty to that third party." Mr. Suprock's reliance on this language in *Stinson*, however, is misplaced. First, *Stinson* dealt with the tort of negligence, in which duty is a requisite element of the claim. *See Kaveny*, 138 N.M. at 437, 120 P.3d at 859 (distinguishing the language in *Stinson* referring to a duty on the basis that *Stinson* involved a

tort in which duty is a requisite element of the claim). Second, the Court in *Stinson* acknowledged that such a duty could arise simply from the officer's individual duty to exercise reasonable care toward a third-party; in other words, such duty may arise irrespective of the employment. *Stinson*, 123 N.M. at 487-88, 943 P.2d at 134-35. This Court therefore rejects Mr. Suprock's suggestion that Plaintiffs must allege a separate duty independent from the elements of the torts at issue here.

Finally, Mr. Suprock challenges the alter ego allegations in the Complaint. Among other things, he argues that the alter ego allegations in the Complaint are insufficient to justify piercing the corporate veil to hold him personally liable for the actions of PCS. In opposing the Motion, however, Plaintiffs represent that they "are not attempting to reach beyond the corporate structure to hold Suprock liable for actions taken by PCS." (Doc. No. 13 at 7). Instead, Plaintiffs contend that they seek to do the "opposite," explaining "Suprock is liable to Plaintiffs for his **own** conduct, as is PCS as a result of its agent's conduct acting on its behalf." (*Id.*). Accordingly, as Mr. Suprock's liability is not premised on a veil-piercing theory, but rather on his own alleged tortious acts, the Court will not address these allegations further at this time.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant John L. Suprock's Motion to Dismiss (Doc. Nos. 10-11) is **DENIED**.

DATED this 12 day of July, 2010.

_____
MARTHA VÁZQUEZ
Chief District Court Judge